

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00441-CV

**RIO GRANDE H2O GUARDIAN** and Albert F. Muller, Jr.,
Appellants

v.

**ROBERT MULLER FAMILY PARTNERSHIP LTD.**, d/b/a Robert Muller, Ltd.
and Muller's Rosetta Stone, LLC,
Appellees

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2013CVQ001860D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:  Catherine Stone, Chief Justice

Sitting:  Catherine Stone, Chief Justice
Karen Angelini, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  January 29, 2014

REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART

This is an accelerated interlocutory appeal of the trial court's order denying a motion to dismiss under the Texas Citizens Participation Act which is an anti-SLAPP (Strategic Lawsuits Against Public Participation) law.  Appellants, Rio Grande $H_2O$ Guardian and Albert F. Muller, Jr., contend the trial court erred in denying their motion because: (1) their actions in filing the underlying lawsuit are protected by the Act; and (2) the appellees, Robert Muller Family Partnership Ltd. d/b/a Robert Muller, Ltd. and Muller's Rosetta Stone, LLC, failed to establish a

prima facie case to support their counterclaims and third-party claims by clear and specific evidence. We agree with appellants.

<h3 style="text-align:center">BACKGROUND[1]</h3>

By state law, all zoning ordinances adopted by the City of Laredo must be in accordance with the Comprehensive Plan the City adopted in 1991. *City of Laredo v. Rio Grande H₂O Guardian*, 2011 WL 3122205, at \*1 (cited hereinafter as *Rio Grande H₂O Guardian I)*. In 2009, Rio Grande H₂O Guardian, a non-profit corporation, "filed a declaratory judgment action against the City challenging the legality of [two] new zoning ordinances as violative of the City's Comprehensive Plan."[2] *Id.* The City filed a plea to the jurisdiction asserting that Rio Grande H₂O Guardian lacked standing to bring the suit, its claims were not ripe for consideration, and its claims were moot. *Id.* at \*2. The trial court denied the City's plea, and the City filed an interlocutory appeal challenging the ruling in this court. *Id.* This court affirmed the trial court's order. *Id.* at \*11.

Almost a year and a half after this court issued its opinion, the appellees, Robert Muller Family Partnership Ltd. d/b/a Robert Muller, Ltd. and Muller's Rosetta Stone, LLC, filed counterclaims against Rio Grande H₂O Guardian and third-party claims against Albert F. Muller, Jr., alleging claims for tortious interference with an existing contract, tortious interference with prospective business relations, aiding and abetting, and civil conspiracy. The appellees also alleged that the corporate form of Rio Grande H₂O Guardian should be disregarded based on an alter ego theory. The basis for the appellees' claims against Rio Grande H₂O Guardian was that

---

[1] Many of the facts set forth in this section are based on this court's prior opinion in *City of Laredo v. Rio Grande H₂O Guardian*, No. 04-10-00872-CV, 2011 WL 3122205 (Tex. App.—San Antonio July 27, 2011, no pet.), which disposed of an appeal, arising from the same underlying lawsuit, that challenged the trial court's denial of a plea to the jurisdiction.

[2] Rio Grande H₂O Guardian also named the following as additional defendants: Robert Muller Family Partnership, Ltd., Muller's Rosetta Stone, LLC, and other companies with an interest in the rezoned property.

its lawsuit opposing the zoning ordinances was *ultra vires* because it was beyond the purposes for which Rio Grande H$_2$O Guardian was formed as stated in its Certificate of Formation and was "not germane to the organization's purpose." With regard to Albert F. Muller, Jr., the petition alleges, "Rio Grande H$_2$O Guardian, by and through Albert F. Muller, Jr., continue [sic] to attempt to challenge and oppose the zoning ordinances at issue."

Rio Grande H$_2$O Guardian and Albert F. Muller, Jr. filed a motion to dismiss under the Act to which the appellees filed a response and supplemental response. After a hearing, the trial court denied the motion, and this appeal was filed challenging that ruling.

## OVERVIEW OF THE ACT AND STANDARD OF REVIEW

Among other purposes, the Act is designed to "encourage and safeguard the constitutional rights of persons to petition … and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 (West Supp. 2013). The Act is to "be construed liberally to effectuate its purpose and intent fully." *Id*. at § 27.011(b).

In order to promote these purposes, the Act "creates an avenue at the early stage of litigation for dismissing unmeritorious suits that are based on the defendant's exercise of the rights of free speech, petition, or association" as the Act defines those rights. *In re Lipsky*, 411 S.W.3d 530, 539 (Tex. App.—Fort Worth 2013, orig. proceeding [mand. pending]) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a) (West Supp. 2013)). In this regard, the Act contains "a burden-shifting mechanism" in seeking and defending against a dismissal. *See Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 723 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). The moving party must show by a preponderance of the evidence that the legal action it seeks to dismiss is "based on, relates to, or is in response to the party's exercise of" the right of free speech, petition, or association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b) (West Supp. 2013); *see also In*

*re Lipsky*, 411 S.W.3d at 539; *Rehak*, 404 S.W.3d at 723. If the moving party meets this burden, the burden shifts to the party bringing the legal action to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see also In re Lipsky*, 411 S.W.3d at 539; *Rehak*, 404 S.W.3d at 723-24.

We agree with the Houston court that we review both steps in this analysis under a *de novo* standard of review. *See Rehak*, 404 S.W.3d at 724-27. Under the second step, the Act "does not define what sort of evidence satisfies the 'clear and specific' qualitative standard, but it expresses that in determining the propriety of dismissal, courts may consider 'the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based.'" *In re Lipsky*, 411 S.W.3d at 539 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 27.006 (a) (West Supp. 2013)). "'Clear and specific evidence' has been described as evidence that is 'unaided by presumptions, inferences, on intendments.'" *Rehak*, 404 S.W.3d at 726 (quoting *McDonald v. Clemens*, 464 S.W.2d 450, 456 (Tex. App.—Tyler 1971, no writ)). "'Prima facie evidence is evidence that, until its effect is overcome by other evidence, will suffice as proof of a fact in issue.'" *Id*. (quoting *Duncan v. Butterowe, Inc.*, 474 S.W.2d 619, 621 (Tex. Civ. App.—Houston [14th Dist.] 1971, no writ)). "'In other words, a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposite party.'" *Id*. (quoting *Duncan*, 474 S.W.2d at 621). Therefore, in analyzing the second step, "we determine de novo whether the record contains a minimum quantum of clear and specific evidence that, unaided by inferences, would establish each essential element of the claim in question if no contrary evidence is offered." *Id*. at 727.

## EXERCISE OF RIGHT TO PETITION

Focusing on the first step in our analysis, the crux of the claims by the appellees clearly relates to the filing of the underlying lawsuit. The "exercise of the right to petition" includes a "communication in or pertaining to a judicial proceeding" and "a communication that is reasonably

likely to encourage consideration or review of an issue by a legislative, executive, judicial or other governmental body or in another governmental or official proceeding." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4) (West Supp. 2013). In this case, the lawsuit was filed to encourage the trial court to consider whether the City's two new zoning ordinances were invalid because they were adopted in violation of the City's Comprehensive Plan.

The appellees contend that the appellants failed to meet their burden of proving that the underlying lawsuit related to the exercise of their right to petition because they presented no evidence. Unlike other types of cases where pleadings are not considered evidence, section 27.006 of the Act, which is entitled "Evidence," expressly provides, "In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id*. at § 27.006(a). Because we may consider the pleadings as evidence in this case, Rio Grande H$_2$O Guardian's petition established that the appellants were exercising their right to petition in filing the lawsuit.

The appellees next contend Rio Grande H$_2$O Guardian had no right to petition because the filing of the lawsuit was not within the powers it was formed to exercise. In its pleadings, the appellees specifically asserted, "the diminution in property values due to hypothetical water pollution, litter, noise, light traffic, dust and/or odor because of the zoning are not germane to the organization's purpose." This argument fails for three reasons.

First, section 20.002(b)(1) of the Texas Business Organizations Code provides that an act of a corporation is not invalid because the act was beyond the purposes of the corporation as expressed in the corporation's certificate of formation. TEX. BUS. ORGS. CODE ANN. § 20.002(b) (West 2012). Second, the fact that an act is beyond the scope of a corporation's stated purpose can be asserted in a proceeding brought only by a shareholder or member of the corporation, the corporation itself, or the attorney general. *Id*. at § 20.002(c)(1). Finally, the appellees' argument

is contrary to this court's holding in *Rio Grande H₂O Guardian I* that the filing of the lawsuit was germane to Rio Grande H₂O Guardian's organizational purpose because the lawsuit was within its stated goals of "'preserving and enhancing the water quality of the Rio Grande and its local tributaries,' and 'preservation of … low-density residential area near the Rio Grande.'" 2011 WL 3122205, at *5.

In addressing this third basis for our holding in its response, the appellees sought to rely on the absence of a specific reference to these stated goals in Rio Grande H₂O Guardian's certificate of formation. The certificate of formation stated, however, that Rio Grande H₂O Guardian was formed for the specific purpose of "Land and water restoration / management / conservation / guardianship." The certificate of formation further stated "The purposes of land and water restoration / management / conservation / guardianship" included "provid[ing] for conservation of the natural water resources of the Rio Grande River basin in the Laredo-Nuevo-Laredo region; and to provide resources either through itself or funding for other organizations that will act as guardians of the water quality of the watershed of the Rio Grande River tributaries in and around the Laredo-Nuevo-Laredo region." These stated purposes are consistent with the goals considered by this court in our earlier decision.

Accordingly, appellants have met their burden of showing that the underlying lawsuit is based on or related to their exercise of the right to petition.

## CLEAR AND SPECIFIC EVIDENCE OF PRIMA FACIE CASE

Because the appellants satisfied the first step of our analysis, the burden shifts to the appellees to establish "by clear and specific evidence a prima facie case for each essential element" of their counterclaims and third-party claims. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c) (West Supp. 2013); *see also In re Lipsky*, 411 S.W.3d at 539; *Rehak*, 404 S.W.3d at 723-24. The primary claims asserted by the appellees were tortious interference with contract and tortious

interference with prospective business relations. One element of these claims required the appellees to establish a willful and intentional act of interference with a contract or a tortious or unlawful act by the appellants that prevented a reasonably probable business relationship. *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995); *Dunham Engineering, Inc. v. Sherwin-Williams Co.*, 404 S.W.3d 785, 797 n.7 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (quoting *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 860 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)); *Newman v. Kock*, 274 S.W.3d 697, 702 (Tex. App.—San Antonio 2008, no pet.).

In their motion to dismiss, appellants asserted that the tortious act alleged in support of the appellees' claims was that Rio Grande $H_2O$ Guardian's claims challenging the City's zoning ordinance "were not properly a function of [its] organizational purpose." In their response to the appellants' motion, the appellees conceded that the basis for their claims "[b]riefly, and stated simply" was Rio Grande $H_2O$ Guardian's "fil[ing] [of] a lawsuit that it had neither the legal power, the authority, nor the right to file." For the reasons previously stated, we hold that Rio Grande $H_2O$ Guardian had the legal authority, power, and right to file the lawsuit. Therefore, the filing of the lawsuit was not a tortious act, and appellees failed to satisfy their burden of providing clear and specific evidence of any tortious act. Because appellees' claims for civil conspiracy and aiding and abetting[3] depend on participation in some underlying tort, those claims also fail. *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex. 2001); *In re Lipsky*, 411 S.W.3d at 549, 552. Finally, piercing the corporate veil and alter ego are "means of imposing on an individual a corporation's liability for an underlying cause of action;" "these theories … are not substantive causes of action." *Phillips v. United Heritage Corp.*, 319 S.W.3d 156, 158-59 (Tex.

---

[3] We note that some uncertainty exists as to "whether Texas recognizes a cause of action of 'aiding and abetting' separately from a civil conspiracy claim." *In re Lipsky*, 411 S.W.3d at 552 n.26. Because we reject this claim for other reasons, we need not decide whether aiding and abetting is a viable, separate cause of action.

App.—Waco 2010, no pet.). Because the appellees failed to meet their burden on their tortious interference claims, no underlying cause of action exists to support an alter ego theory of liability.

CONCLUSION

The appellants met their burden of proving that the appellees' claims relate to the appellants' exercising their right to petition. Even if the filing of the lawsuit was beyond the scope of Rio Grande H$_2$O Guardian's purposes, the filing was not invalid or *ultra vires*, and the appellees did not have standing to assert such a contention. TEX. BUS. ORGS. CODE ANN. §§ 20.002(b), 20.002(c)(1) (West 2012). Moreover, this court previously held that the lawsuit was germane to Rio Grande H$_2$O Guardian's organizational purpose, *Rio Grande H$_2$O Guardian I*, 2011 WL 3122205, at *5, and our holding is supported by the purposes stated in Rio Grande H$_2$O Guardian's Certificate of Formation.

The appellees failed to establish a prima facie case for each essential element of their tortious interference claims by clear and specific evidence. Because the civil conspiracy, aiding and abetting, and alter ego theories of liability required the establishment of an underlying tort, appellees also failed to establish those claims.

For the foregoing reasons, we reverse the trial court's order and dismiss the appellees' claims against appellants. The cause is remanded to the trial court to determine the amount of the expenses, attorney's fees, and court costs to be awarded to the appellants in accordance with section 27.009(a) of the Act.

Catherine Stone, Chief Justice